CLIFFORD CHANCE US LLP
Jennifer C. DeMarco
Sarah N. Campbell
31 West 52nd Street
New York, New York 10022
Telephone: (212) 878-8000

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

In re:

SUPERCANAL S.A.,

Debtor in a Foreign Proceeding.[1]

------------------------------------------------------- x

Chapter 15

Case No. [_____]

**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR ORDER
GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING
PURSUANT TO 11 U.S.C. §§ 1515 AND 1517, ENFORCING THE ENDORSED
REORGANIZATION PLAN, AND GRANTING CERTAIN RELATED RELIEF
PURSUANT TO 11 U.S.C. §§ 105, 1507, 1509, 1520, 1521, 1525 AND 1527**

---

[1]    The last four digits of the Debtor's taxpayer registration numbers is (252-6).  The Debtor's executive headquarters is located at Lisandro de la Torre 150, Mendoza (5500) Mendoza, Argentina.

# TABLE OF CONTENTS

Introduction ............................................................................................................................1

Preliminary Statement .........................................................................................................2

Factual Background ..............................................................................................................6

Argument................................................................................................................................6

A.    *The Concurso is Entitled to Recognition Pursuant to Section 1517 of the Bankruptcy
      Code as a Foreign Main Proceeding* ...........................................................................6

    1.    Venue is Proper in this District ...............................................................................6

    2.    This Case is Proper Under Chapter 15 ....................................................................7

        a.    The Concurso is a "Foreign Proceeding"......................................................7

        b.    The Petitioner is a Proper "Foreign Representative" .....................................9

        c.    The Foreign Representative Properly Filed this Chapter 15 Case ...................11

        d.    The Chapter 15 Petition is Consistent with the Purpose of Chapter 15 ............11

    3.    The Concurso is a "Foreign Main Proceeding" Under Sections 1502 and 1517 of
      the Bankruptcy Code............................................................................................12

    4.    The Court Should Enter an Order Granting Recognition of the Concurso as a
      Foreign Main Proceeding Pursuant to Section 1517 of the Bankruptcy Code ...............14

B.    *The Court Should Recognize and Enforce the Reorganization Plan and the
      Endorsement Order in the United States and Grant Related Relief* .........................15

    1.    Recognition and Enforcement is Consistent with Principles of Comity .........................18

    2.    Granting a Permanent Injunction is Necessary to Enforce the Endorsement of
      the Reorganization Plan .......................................................................................21

    3.    Additional Relief is also Warranted under Section 1525 .............................................23

    4.    Granting Additional Relief with Respect to the 2005 Notes and the U.S.
      Intermediaries is Appropriate................................................................................24

Conclusion ............................................................................................................................26

# TABLE OF AUTHORITIES

**CASES**

*Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*,
470 B.R. 408 (N.D. Tex. 2012), *aff'd*, 701 F.3d. 1031 (5th Cir. 2013), *cert. dismissed*, 133 S. Ct. 1862
(2013) ...................................................................................................................................................10

*Argentinian Recovery Co. LLC v. Bd. of Dirs. of Multicanal S.A.*,
331 B.R. 537 (Bankr. S.D.N.Y. 2005) .............................................................................................15

*Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*,
480 B.R. 129 (S.D.N.Y. 2012) ...........................................................................................................8

*Clarkson v. Coughlin*,
898 F. Supp. 1019 (S.D.N.Y. 1995) ..................................................................................................21

*Haarhuis v. Kunnan Enters., Ltd.*,
177 F.3d 1007 (D.C. Cir. 1999)........................................................................................................20

*Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA)*,
535 B.R. 543 (Bankr. S.D.N.Y. 2015) .............................................................................................16

*In re ABC Learning Centres Ltd.*,
728 F.3d 301 (3d Cir. 2013)..............................................................................................................16

*In re Aralco S.A. – Industria e Comercio, et al.*,
No. 15-10419 [Dkt. No. 22] (Bankr. S.D.N.Y. April 21, 2015) .......................................................25

*In re Bd. of Dirs. of Compañía General de Combustibles S.A.*,
269 B.R. 104 (Bankr. S.D.N.Y. 2001) .............................................................................................14

*In re Bd. of Dirs. of Multicanal S.A.*,
314 B.R. 486 (Bankr. S.D.N.Y. 2004); *aff'd* and remanded, 331 B.R. 537 (S.D.N.Y. 2005) ......................23

*In re Bd. of Dirs. of Telecom Arg. S.A.*,
Case No. 05-17811 (BRL), 2006 WL 686867 (Bankr. S.D.N.Y. Feb. 24, 2006) *aff'd*,
Case No. 06-2352 (NRB), 2006 WL 3378687 (S.D.N.Y. Nov. 20, 2006), *aff'd*,
Telecom Arg., 528 F.3d 162 (2d Cir. 2008) .................................................................................15, 23

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) .................................11, 12, 13

*In re Berau Capital Res. Pte Ltd (In re Berau)*,
Bk. No. 15-11804-MG, 2015 WL 6507871 (Bankr. S.D.N.Y. Oct. 28, 2015)....................................7

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009).................................................................................................8, 13

*In re Boart Longyear Ltd.*,
Case No. 17-11156 (MEW) [Dkt. No. 45] (Bankr. S.D.N.Y. Aug. 30, 2017) ................................18

*In re Cablevisión S.A.*,
   Case No. 04-15697 (SMB) (Bankr. S.D.N.Y. October 23, 2009) ................................23

*In re Cell C Proprietary Ltd.*,
   571 B.R. 542 (Bankr. S.D.N.Y. 2017) ......................................................................17

*In re Centrais Elétricas do Pará S.A.*,
   No. 12-14568 [Dkt. No. 19] (Bankr. S.D.N.Y. Dec. 12, 2012) ..................................11

*In re Compania de Alimentos Fargo, S.A.*,
   376 B.R. 427 (Bankr. S.D.N.Y. 2007) ......................................................................14

*In re Daebo Int'l Shipping Co., Ltd.*,
   543 B.R. 47 (Bankr. S.D.N.Y. 2015) ........................................................................16

*In re Fairfield Sentry Ltd.*,
   440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd*, 714 F.3d 127 (2d Cir. 2013) ..................13

*In re Garcia Avila*,
   296 B.R. 95 (Bankr. S.D.N.Y. 2003) ........................................................................22

*In re Gee*,
   53 B.R. 891 (S.D.N.Y. 1985) ...................................................................................20

*In re Inversora Eléctrica de Buenos Aires S.A.*,
   560 B.R. 650 (Bankr. S.D.N.Y. 2016) ......................................................................23

*In re Ionica*,
   241 B.R. 829 (Bankr. S.D.N.Y. 1999) ......................................................................20

*In re Ir. Bank Resolution Corp.*,
   2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) ..........................................8

*In re Kaisa Grp. Holdings Ltd.*,
   Case No. 16-11303 (SHL) [Dkt. No. 22] (Bankr. S.D.N.Y. July 14, 2016) ................18

*In re Lines*,
   81 B.R. 267 (Bankr. S.D.N.Y. 1988) ........................................................................22

*In re Lupatech S.A.*,
   No. 14-11559 (SMB) [Dkt. No. 26] (Bankr. S.D.N.Y. June 26, 2014) ......................10

*In re Metcalfe & Mansfield*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) ......................................................................23

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
   474 B.R. 88 (S.D.N.Y. 2012) ...................................................................................13

*In re MMG LLC*,
   256 B.R. 544 (Bankr. S.D.N.Y. 2000) ......................................................................22

*In re Mood Media Corp.*,
   Case No. 17-11413 (MEW) [Dkt. No. 44] (Bankr. S.D.N.Y. June 28, 2017) .............18

*In re OAS S.A.*,
    533 B.R. 83 (Bankr. S.D.N.Y. 2015) ....................................................................10

*In re Ocean Rig UDW Inc.*,
    Case No. 17-10736 (MG) [Dkt. No. 153] (Bankr. S.D.N.Y. Sept. 20, 2017)................18

*In re Pac. Expl. & Prod. Corp.*,
    Case No. 16-11189 (JLG) [Dkt. No. 31] (Bankr. S.D.N.Y. Oct. 3, 2016) ...................18

*In re Petition of Hourani*,
    180 B.R. 58, 68 (Bankr. S.D.N.Y 1995)..............................................................19

*In re Rede Energia S.A.*,
    No. 14-10078 (SCC) [Dkt. No. 18] (Bankr. S.D.N.Y. Mar. 6, 2014).........................10

*In re Rede Energia S.A.*,
    No. 14-10078 (SCC) [Dkt. No. 36] (Bankr. S.D.N.Y. September 9, 2014) ..................25

*In re Rede Energia*,
    515 B.R. 69 (Bankr. S.D.N.Y. 2014) ..............................................................17, 23

*In re Rubin*,
    160 B.R. 269 (Bankr. S.D.N.Y. 1993) ................................................................22

*In re Sifco S.A.*,
    No. 14-11179 [Dkt. No. 38] (Bankr. S.D.N.Y. Oct. 23, 2014)................................10

*In re Sino-Forest Corp.*,
    501 B.R. 665 (Bankr. S.D.N.Y. 2013) ................................................................23

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) .................12

*In re Treco*,
    240 F.3d 148 (2d Cir. 2001) ............................................................................19

*In re Tri-Cont'l Exch. Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006) ................................................................13

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (3d Cir. 2013) ............................................................................13

*Primesource Holdings Ltd. v. Compania Argentina de Navegacion Interoceanica S.A.*,
    1997 WL 800830 (E.D. La. Dec. 31, 1997) ........................................................15

*The Argo Fund Ltd. V. Bd. of Dirs. of Telecom Arg., S.A., as Foreign Rep. of Telecom Arg., S.A.*
    *(In re Bd. of Dirs. of Telecom Arg., S.A.)*, 528 F.3d 162 (2d Cir. 2008) ...........................17, 18, 23

*Triton Container Int'l, Ltd. v. Cinave, S.A.*,
    1997 WL 634308 (E.D. La. Oct. 10, 1997) ..........................................................15

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ............................................................................21

**STATUTES**

11 U.S.C. § 101(23) ........................................................................................................... 11

11 U.S.C. § 101(24) .................................................................................................. 5, 13, 18

11 U.S.C. § 105 ................................................................................................................. 20

11 U.S.C. § 105(a) ............................................................................................................ 21

11 U.S.C. 1501 ................................................................................................................. 28

11 U.S.C. § 1501(a) .......................................................................................................... 20

11 U.S.C. § 1501(a)(3) ..................................................................................................... 15

11 U.S.C. § 1501(b)(1) ..................................................................................................... 11

11 U.S.C. § 1502(4) .................................................................................................... 16, 18

11 U.S.C. § 1504 ............................................................................................................... 15

11 U.S.C. 1507 ............................................................................................................ 20, 21

11 U.S.C. § 1507(a) .......................................................................................................... 20

11 U.S.C. § 1507(b) ..................................................................................................... 22, 24

11 U.S.C. § 1509(a) .......................................................................................................... 15

11 U.S.C. § 1515 ......................................................................................................... 15, 18

11 U.S.C. § 1515(b) .......................................................................................................... 15

11 U.S.C. § 1515(c) .......................................................................................................... 15

11 U.S.C. § 1515(d) .......................................................................................................... 15

11 U.S.C. § 1516(c) .......................................................................................................... 16

11 U.S.C. 1517 ............................................................................................................. 5, 18

11 U.S.C. § 1517(b)(1) ..................................................................................................... 16

11 U.S.C. § 1521 ......................................................................................................... 20, 21

11 U.S.C. § 1521(a) ..................................................................................................... 20, 21

11 U.S.C. § 1521(e) .......................................................................................................... 25

11 U.S.C. § 1525 ......................................................................................................... 20, 28

11 U.S.C. § 1525(a) .......................................................................................................... 27

28 U.S.C. § 1410 ............................................................................................................... 11

28 U.S.C. § 1410(a) ................................................................................................................. 10

Title II, Chapters I through VI of the Argentine Reorganizations and Bankruptcy Law No. 24,522 ........................... 5

**TREATISES**

COLLIER ON BANKRUPTCY ¶ 304.08 (15th ed. 2007) ................................................................. 22

## Introduction

Eduardo Marcelo Vila is the foreign representative (the "**Petitioner**" or "**Foreign Representative**") of Supercanal S.A. (the "**Debtor**"). On the date hereof, the Foreign Representative commenced this chapter 15 case by filing a chapter 15 petition contemporaneously herewith (the "**Chapter 15 Petition**") and filed a motion (the "**Motion**") seeking entry of a final order (the "**Recognition Order**"): (a) granting the Chapter 15 Petition in the above-captioned case (the "**Chapter 15 Case**") and recognizing the Debtor's judicial reorganization a *Concurso Preventivo* (the "**Concurso**" or "**Foreign Proceeding**") under the provisions of Title II, Chapters I through VI of the Argentine Reorganizations and Bankruptcy Law No. 24,522 (as amended) (the "**Argentine Insolvency Law**") as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "**Bankruptcy Code**"); (b) recognizing the Petitioner as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code and entrusting him with the administration of the Debtor's assets within the territorial jurisdiction of the United States; (c) recognizing and enforcing the reorganization plan (*Propuesta de Acuerdo Preventivo de Acreedores*) (the "**Reorganization Plan**") in the United States, giving full force and effect to and granting comity in the United States to the order of the National First Instance Commercial Court No. 20 (*Juzgado Nacional de Primera Instancia en lo Comercial No. 20*) in Buenos Aires, Republic of Argentina (the "**Argentine Court**") dated March 3, 2011 (the "**Endorsement Order**") endorsing the Reorganization Plan;[2] (d) authorizing and directing the taking of lawful actions necessary to implement and give effect to the terms of the Reorganization Plan; (e) permanently enjoining all parties from commencing or taking any

---

[2]    English translations of the Reorganization Plan and the Endorsement Order are attached to the Foreign Representative Declaration as Exhibits B and C, respectively.

action within the territorial jurisdiction of the United States to interfere with the Reorganization

Plan, including, without limitation, to obtain possession of, exercise control over, or assert claims

against the Debtor or its property in the United States; and (f) granting such other and further

relief as the Court deems just and proper. The Foreign Representative respectfully submits this

Memorandum of Law in support of the Motion.

### Preliminary Statement

1.      The Debtor is a corporation (*sociedad anónima*) organized and operating

under the laws of Argentina. The Debtor's business, which is conducted through various

subsidiaries that are not party to this Chapter 15 Case, consists primarily of the installation

operation and development of cable television and data cable transmission. The Debtor is a

major provider of television and broadband services in Argentina and its operations and

subscribers are located in Argentina. *See* Foreign Representative Declaration at ¶¶4-5.

2.      On March 29, 2000, the Debtor, together with certain affiliated entities,

filed petitions commencing the Concurso before the Argentine Court in order to obtain

protections afforded under Argentine law and to restructure their obligations. *See* Foreign

Representative Declaration at ¶19. The majority of the Debtor's obligations are governed by

Argentine law with the exception of certain financial obligations which are governed by New

York law including the U.S. $300 million 11.5% senior notes due 2005 (the "**2005 Notes**")

issued pursuant to a New York law governed indenture dated as of May 13, 1998, by and among

Supercanal Holding S.A. and Supercanal S.A., as issuers, and The Bank of New York, as

Trustee, Registrar and Paying Agent (the "**Indenture**"). *See* Foreign Representative Declaration

at ¶12.

3.      The Argentine Court admitted the petitions and ordered the

commencement of the Concurso on April 19, 2000.

4.      Upon commencement of a Concurso, an automatic statutory stay arises staying all other actions or proceedings against the debtor or its property during the pendency of the Concurso. *See* Argentine Counsel Declaration at ¶7.

5.      On November 4, 2005, the Reorganization Plan was filed before the Argentine Court. The Reorganization Plan involved a corporate restructuring of the group pursuant to which Supercanal Holding S.A., which was an issuer under the 2005 Notes and the former parent company of the Debtor, merged into the Debtor. *See* Foreign Representative Declaration at ¶21. The Restructuring Plan also provided for the restructuring and capitalization of the Debtor's unsecured obligations (including the 2005 Notes) into shares of a newly formed parent company. *See id*.

6.      On November 21, 2005, evidence of consent to the Reorganization Plan by the requisite threshold of unsecured creditors under Argentine Insolvency Law was filed before the Argentine Court. *See* Foreign Representative Declaration at ¶25. The Argentine Court first endorsed the Reorganization Plan on December 26, 2007. *See id.* at ¶28. As set forth in further detail in the Argentine Counsel Declaration, the Reorganization Plan was then subject to appeals by certain secured creditors. Without detailing the appellate history with respect to the challenges to the Reorganization Plan and further endorsements issued by the Argentine Court with respect thereto, upon the withdrawal of the last remaining appeal on March 10, 2015, the last Endorsement Order with respect to the Reorganization Plan which was entered on March 3, 2011 became final as of December 28, 2011 (the date the Endorsement Order was confirmed by the Argentine National Court of Appeals). *See* Argentine Counsel Declaration at ¶32.

7.      Pursuant to Argentine Insolvency Law, the endorsement of a reorganization plan results in the discharge of all prepetition unsecured claims (which are

replaced by the obligations assumed under the reorganization plan) and an endorsed reorganization plan extends to all prepetition unsecured creditors whose claims have been verified or admitted, whether or not they have participated. *See* Argentine Counsel Declaration at ¶77. Therefore, upon the Endorsement Order for the Reorganization Plan becoming final, the rights of the Debtor's pre-petition unsecured creditors to receive payment under their original claims was replaced by operation of Argentine Insolvency Law with the obligations assumed by the Debtor under the endorsed Reorganization Plan. *See id.* at ¶78.

8.      The Debtor's Reorganization Plan provides, among other things, for the exchange of the 2005 Notes for Class A Shares in Supercablecanal S.A. ("**Supercablecanal**"), a newly formed parent company of the Debtor. Supercablecanal is a corporation (*sociedad anónima*) organized and operating under the laws of Argentina and owns 99.99% of the Debtor. The Petitioner (Eduardo Marcelo Vila) and Carlos Esteban Cvitanich were appointed as agents in connection with implementation of certain steps under the Reorganization Plan including the creation of Supercablecanal and the delivery of Supercablecanal's Class A Shares in exchange for the 2005 Notes pursuant to the Reorganization Plan.

9.      Pursuant to the Reorganization Plan, the 2005 Notes have no further force or effect and the sole right granted under the Reorganization Plan with respect to the 2005 Notes is the right to exchange them for Supercablecanal's Class A Shares. Further, under Argentine law, the statute of limitation for the delivery of the Notes in exchange for the Class A Shares is five years, following which holders who have not delivered their Notes in exchange for the Class A Shares will have no further ability to do so, and the corresponding Class A Shares will be either cancelled, distributed pro-rata among the other holders of the Class A Shares at the time

outstanding or sold, at the discretion of Supercablecanal. Any 2005 Notes not exchanged in accordance with the Reorganization Plan by such time will be cancelled and terminated.

10.    The 2005 Notes were issued in the form of registered notes in global form. The 2005 Notes were issued in the name of Cede & Co., as nominee of the Depository Trust Company ("**DTC**") and the global certificates deposited with the Bank of New York Mellon, in its capacity as Trustee under the Indenture governing the 2005 Notes, as custodian for DTC. The 2005 Notes continue to be registered in the name of Cede & Co. and deposited in the DTC system. In addition, the 2005 Notes continue to be held in trust in New York with The Bank of New York Mellon. Because the 2005 Notes are held through custody accounts with independent brokers and custodians, the Debtor is unable to independently verify all of the identities of the beneficial owners of the 2005 Notes (such brokers, nominees, custodians and DTC participants that hold the 2005 Notes in "street name" on behalf of beneficial owners, together with the Trustee and DTC, are hereinafter referred to as "**U.S. Intermediaries**").

11.    On or around June 1, 2018, notice regarding the exchange and procedures was provided to the holders of the 2005 Notes through the DTC system. The 2005 Notes may be delivered for exchange for the Class A Shares through the DTC's system until September 21, 2018 (the "**DTC Exchange**"). The Trustee with respect to the 2005 Notes will act as exchange agent to receive the 2005 Notes during the DTC Exchange. Upon receipt of the 2005 Notes by the Trustee, the Debtor will then cause the Class A Shares to be registered and delivered directly to the holders. Thereafter, the DTC's system may not be available for delivery of the 2005 Notes and holders wishing to exchange them for the Class A Shares will have to contact the Debtor. The Class A Shares will continue to be available for exchange until expiration of the five year statute of limitations, which expires on June 30, 2022. One of the purposes for seeking the relief

requested herein is to provide comfort to the Trustee for the 2005 Notes regarding its authority to take necessary ministerial steps in connection with the exchange including canceling the 2005 Notes upon expiration of the statute of limitations.

12.    The Foreign Representative commences this Chapter 15 Case to seek the assistance of this Court to give effect in the United States to the Reorganization Plan and the Endorsement Order, to eliminate the risk of litigation in the United States by any creditor in contravention thereof, and to permit the orderly implementation of the Reorganization Plan.

## Factual Background

13.    For additional information regarding the Debtor's business, organization, debt structure, and circumstances leading to the Concurso and this Chapter 15 Case, the Court is respectfully referred to the *Declaration of Eduardo Marcelo Vila in Support of the (I) Petition for Recognition of Foreign Main Proceeding; and (II) Motion for an Order (A) Granting Relief in Aid of a Foreign Proceeding, (B) Enforcing the Endorsed Reorganization Plan, and (C) Granting Certain Related Relief* (the "**Foreign Representative Declaration**"), which is filed concurrently herewith and incorporated herein by reference. The Foreign Representative Declaration contains the relevant facts for the purposes of this Memorandum of Law.

## Argument

**A.  The Concurso is Entitled to Recognition Pursuant to Section 1517 of the Bankruptcy Code as a Foreign Main Proceeding**

### 1.    Venue is Proper in this District

14.    Section 1410 of title 28 of the United States Code provides that venue of a case brought pursuant to chapter 15 of the Bankruptcy Code is proper in the district "in which the debtor has its principal place of business or principal assets in the United States." 28 U.S.C. § 1410(a). Venue is proper in this district. While substantially all of the Debtor's assets (and those

of its subsidiaries through which it operates) are located in Argentina, the 2005 Notes are issued

under an Indenture governed by New York law and the parties to the Indenture have consented to

New York jurisdiction and venue. As a result, the Debtor has intangible property in the United

States in the form of contractual rights that are legally located in New York. *See In re Berau*

*Capital Res. Pte Ltd (In re Berau)*, Bk. No. 15-11804-MG, 2015 WL 6507871 (Bankr. S.D.N.Y.

Oct. 28, 2015). In addition, the Debtor has an interest in a cash retainer for the services of

Clifford Chance US LLP in connection with this Chapter 15 Case that is held in a client escrow

account in New York. The foregoing assets constitute the Debtor's principal assets in the United

States and are located in this district. Accordingly, it is respectfully submitted that venue in this

district is consistent with the interests of justice and is proper pursuant to 28 U.S.C. § 1410.

> **2.**    **This Case is Proper Under Chapter 15**

15.    Chapter 15 of the Bankruptcy Code applies where a foreign representative

seeks the assistance of a United States court in connection with a foreign proceeding. 11 U.S.C. §

1501(b)(1). The Debtor's case is proper under chapter 15 because (i) it concerns a "foreign

proceeding," (ii) it has been commenced by the Petitioner, an authorized "foreign

representative," (iii) the Chapter 15 Petition and all required supporting documentation were

properly filed, and (iv) the relief sought by the Chapter 15 Petition is consistent with the

objectives of chapter 15.

> **a.**    **The Concurso is a "Foreign Proceeding"**

16.    The Concurso is a "foreign proceeding" as defined in the Bankruptcy

Code. The term "foreign proceeding" is defined in Section 101(23) of the Bankruptcy Code as:

> [A] collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a

foreign court, for the purpose of reorganization . . . ." 11 U.S.C. § 101(23).

17.     A proceeding is "collective" in nature if it is "one that considers the rights and obligations of all creditors" as opposed to a proceeding brought for the benefit of a single party, such as a "single secured creditor." *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009); *In re Ir. Bank Resolution Corp.*, 2014 Bankr. LEXIS 1990, *44 (Bankr. D. Del. Apr. 30, 2014); *see also Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 136-137 (S.D.N.Y. 2012) ("A collective proceeding is designed to provide equitable treatment to creditors, by treating similarly situated creditors in the same way, and to maximize the value of the debtor's assets for the benefit of all creditors").

18.     The Concurso is "collective" in nature. As described in the Argentine Counsel Declaration, a "Concurso is an insolvency-related proceeding contemplated in the Argentine Insolvency Law, similar to a reorganization under Chapter 11 of the U.S. Bankruptcy Code…". *See* Argentine Counsel Declaration at ¶5. The Concurso involves the consensual financial reorganization of a debtor under the supervision of the Argentine court and the development of a plan for the payment of creditor's claims. *See id*. Further, "the basic principle governing the Concurso proceeding is the *par condition creditorium* upon which all creditors in the same situation must be treated equally." *See id*. Accordingly, the Concurso fits squarely within the Bankruptcy Code's definition of a foreign proceeding.

19.     Other factors that courts have looked to in determining whether a proceeding is collective include "adequate notice to creditors under applicable foreign law, provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding." *See Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 137 (S.D.N.Y. 2012). Here, notice

was given to creditors pursuant to the requirements of Argentine Insolvency Law (and pursuant

to certain additional voluntary supplemental notice that was provided by the Debtor) and

creditors had an opportunity to be heard before the Argentine Court and seek appeals of

decisions thereof in accordance with Argentine Insolvency Law. *See* Argentine Counsel

Declaration at ¶¶13, 23, 49, 87-90 and Foreign Representative Declaration at ¶¶20, 28-34, 41-42.

20.    Finally, the Concurso is a "foreign proceeding" within the meaning of

section 101(23) of the Bankruptcy Code because it is a judicial proceeding in Argentina under

Argentine Insolvency Law and the assets and affairs of the Debtor are subject to the supervision

of the Argentine Court for the purpose of restructuring. *See* Argentine Counsel Declaration at

¶¶9-12

> **b.    The Petitioner is a Proper "Foreign Representative"**

21.    Section 101(24) of the Bankruptcy Code defines who can act as a foreign

representative with respect to a foreign proceeding. Specifically, Section 101(24) of the

Bankruptcy Code provides that:

> The term "foreign representative" means a person or body,
> including a person or body appointed on an interim basis,
> authorized in a foreign proceeding to administer the reorganization
> or the liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding. 11 U.S.C. § 101(24).

22.    Eduardo Marcelo Vila is an individual person. He has been authorized and

empowered by the board of directors of the Debtor to act as a foreign representative in the

Chapter 15 Case. A certified copy of the minutes of the board meeting authorizing and

empowering Eduardo Marcelo Vila to act in such capacity before the Bankruptcy Court and

carry out actions as may be necessary and proper on behalf of the Debtor in relation to the

Chapter 15 Case is attached to the Foreign Representative Declaration as <u>Exhibit I</u>.

23.    The terms of the Reorganization Plan also include his appointment (and that of Carlos Esteban Cvitanich) as agents in connection with implementation of certain steps under the Reorganization Plan including the creation of the Debtor's new parent, Supercablecanal, and the delivery of Supercablecanal's Class A Shares in exchange for the 2005 Notes pursuant to the Reorganization Plan. *See* Foreign Representative Declaration at ¶21.

24.    It is not necessary for a foreign representative to be approved by a foreign court or administrative body. Rather, it is sufficient that a foreign representative be appointed "in the context of a foreign bankruptcy proceeding" such as where a foreign representative is "appointed by a corporation engaged in a foreign bankruptcy proceeding." *See Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd*, 701 F.3d. 1031 (5th Cir. 2013), *cert. dismissed*, 133 S. Ct. 1862 (2013).

25.    Like other reorganization processes where courts have recognized foreign representatives appointed by a corporate board, under the Argentine Insolvency Law, the debtor keeps possession of the estate and maintains the operation of its business in the ordinary course under the supervision of a receiver and the creditors committee. *See* Argentine Counsel Declaration at ¶12; *see also, e.g., In re OAS S.A.*, 533 B.R. 83, 90 (Bankr. S.D.N.Y. 2015) (foreign representative properly authorized by resolutions and powers of attorney from boards of directors of debtors engaged in Brazilian judicial reorganization); *In re Lupatech S.A.*, No. 14-11559 (SMB) [Dkt. No. 26] (Bankr. S.D.N.Y. June 26, 2014) (foreign representative properly authorized by resolutions and powers of attorney from boards of directors of debtors engaged in Brazilian extrajudicial reorganization); *In re Sifco S.A.*, No. 14-11179 [Dkt. No. 38] (Bankr. S.D.N.Y. Oct. 23, 2014); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [Dkt. No. 18] (Bankr. S.D.N.Y. Mar. 6, 2014); *In re Centrais Elétricas do Pará S.A.*, No. 12-14568 [Dkt. No. 19]

(Bankr. S.D.N.Y. Dec. 12, 2012). Accordingly, the Petitioner is an authorized foreign

representative of the Debtor.

### c.    The Foreign Representative Properly Filed this Chapter 15 Case

26.    This Chapter 15 Case was properly commenced as required by sections

1504 and 1509(a) of the Bankruptcy Code. On the date hereof, the Chapter 15 Petition was filed

with this Court and such filing was accompanied by documents and information required by

sections 1515(b) and (c) and translated into English (where necessary) as required by 1515(d)

including, evidence of the Concurso and appointment of the Petitioner. *See* Exhibits B through I

to the Foreign Representative Declaration; s*ee also, e.g., In re Bear Stearns High-Grade*

*Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A

case under chapter 15 is commenced by a foreign representative filing a petition for recognition

of a foreign proceeding under section 1515 of the Bankruptcy Code"), *aff'd*, 389 B.R. 325

(S.D.N.Y. 2008). Because the Petitioner has satisfied the requirements set forth in section 1515

of the Bankruptcy Code, the Chapter 15 Case has been properly commenced.

### d.    The Chapter 15 Petition is Consistent with the Purpose of Chapter 15

27.    One of the objectives of chapter 15 is the "fair and efficient administration

of cross-border insolvencies that protects the interests of all creditors, and other interested

entities, including the debtor." 11 U.S.C. § 1501(a)(3). This Chapter 15 Case has been

commenced for the purpose of obtaining the assistance of this Court in order to ensure effective

implementation of the Reorganization Plan in the United States and, among other things, to (i)

prohibit Debtor's creditors from taking actions in the United States that would undermine the

collective resolution of the Debtor's liabilities in the Concurso under the Reorganization Plan;

(ii) facilitate the implementation of the Reorganization Plan, including the exchange of the 2005

Notes for the Class A Shares; and (iii) facilitate enforcement of the Reorganization Plan and

Endorsement Order in the United States. As such, the Chapter 15 Petition is consistent with the purpose of chapter 15 and the cross-border coordination it promotes.

      **3.**      **The Concurso is a "Foreign Main Proceeding" Under Sections 1502 and 1517 of the Bankruptcy Code**

      28.      The Foreign Representative respectfully submits that the Court should grant recognition of the Concurso as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. 11 U.S.C. § 1517(b)(1).

      29.      Section 1516(c) of the Bankruptcy Code contains a presumption that, absent evidence to the contrary, a debtor's registered office is presumed to be the center of its main interests. *See* 11 U.S.C. § 1516(c); s*ee also In re Bear Stearns*, 374 B.R. at 127, 130. The Debtor is a corporation (*sociedad anónima*) organized and operating under the laws of Argentina and it maintains its registered office in Argentina. *See* Foreign Representative Declaration at ¶4. Therefore, absent evidence to the contrary, the Debtor's center of main interests is presumed to be in Argentina.

      30.      In addition, the consideration of other factors clearly reflect that the Debtor's center of main interests is Argentina. Other factors that may be weighed in considering a Debtor's center of main interests include "the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *In re Bear Stearns*, 374 B.R. at 128 (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10

(S.D.N.Y. 2007)). Courts also take into consideration the expectations of creditors and other

interested parties as the company's center of main interest must be "ascertainable to third

parties." *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127,

136-38 (3d Cir. 2013); *In re Millennium Global Emerging Credit Master Fund Ltd*., 474 B.R. 88,

93 (S.D.N.Y. 2012).

31.    The analysis of a foreign debtor's center of main interests is a flexible one,

as "courts do not apply any rigid formula or consistently find one factor dispositive." *In re

Betcorp Ltd*., 400 B.R. at 290. When applying this totality of the circumstances test, courts

"generally equate the center of main interests with the concept of a 'principal place of business'

under United States law." *See, e.g*., *In re Millenium Global Emerging Credit Master Fund Ltd*.,

458 B.R. at 72 (noting that "plain English" meaning of "center of main interests" in American

jurisprudence is "principal place of business" and that courts have used such terms

"interchangeably").

32.    Here, in addition to the Debtor being a company organized under the laws

of Argentina with its registered office in Argentina: (i) substantially all of the Debtor's assets are

located in Argentina; (ii) all of the Debtor's operations and subscribers are located in Argentina;

and (iii) all of the Debtor's directors and executive officers reside in Argentina. *See* Foreign

Representative Declaration at ¶6.  Argentina clearly is "ascertainable by third parties" as the

Debtor's center of main interests. *See In re Bear Stearns*, 374 B.R. at 129; *see also*, *In re Tri-

Cont'l Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of

main interests is the "place where the debtor conducts the administration of his interests on a

regular basis and is therefore ascertainable by third parties"); *In re Fairfield Sentry Ltd.*, 440

B.R. 60, 63-64 (Bankr. S.D.N.Y. 2010), *aff'd*, 714 F.3d 127 (2d Cir. 2013).

33.    The Foreign Representative respectfully submits that the Court should grant recognition of the Concurso as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

**4.    The Court Should Enter an Order Granting Recognition of the Concurso as a Foreign Main Proceeding Pursuant to Section 1517 of the Bankruptcy Code**

34.    Pursuant to Section 1517 of the Bankruptcy Code, an order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. 11 U.S.C. § 1517. As set forth above, the Concurso is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Foreign Representative qualifies as a "foreign representative" under section 101(24) of the Bankruptcy Code, and the Chapter 15 Petition meets the requirements of Bankruptcy Code section 1515. Accordingly, based on the submissions contained herein and in the Foreign Representative Declaration, entry of an order granting recognition of the Concurso as a foreign main proceeding is appropriate under the circumstances.

35.    Moreover, recognition of the Concurso as a foreign main proceeding is consistent with the public policy of the United States. Argentine *concursos preventivos* have been found to be similar to a chapter 11 reorganization and have been recognized as fair and reasonable. *See e.g.*, *In re Compania de Alimentos Fargo, S.A., 376 B.R. 427* (Bankr. S.D.N.Y. 2007) (dismissing an involuntary chapter 11 case in favor of the debtor's pending Argentine *concurso* and discussing Argentine law, noting "the Argentine insolvency system is procedurally and substantively fair, and provides a suitable forum to adjust the rights of the parties" and "[t]he *concursos preventivo* is similar to a chapter 11 case in the United States"); *In re Bd. of Dirs. of Compañía General de Combustibles S.A.*, 269 B.R. 104, 107 (Bankr. S.D.N.Y. 2001) ("A Concurso Preventivos under Argentine law is similar to a Chapter 11 reorganization.");

*Primesource Holdings Ltd. v. Compania Argentina de Navegacion Interoceanica S.A.*, 1997 WL 800830, at *2 (E.D. La. Dec. 31, 1997) (noting that the Argentine proceeding initiated was similar to a Chapter 11 and according comity to those proceedings); *Triton Container Int'l, Ltd. v. Cinave, S.A.*, 1997 WL 634308, at *4 (E.D. La. Oct. 10, 1997) ("This Court accords comity to Argentina's bankruptcy proceedings because it finds that Cinave has filed in a court of competent jurisdiction and that Argentine bankruptcy laws are similar to those in the United States and comport with American notions of fairness and due process.").

36.     Courts have also granted comity to *acuerdo preventive extrajudicial* ("**APE**") proceedings under Argentine Insolvency Law, likewise observing fairness of the process.  *See e.g.*,  *In re Bd. of Dirs. of Telecom Arg. S.A.*, Case No. 05-17811 (BRL), 2006 WL 686867 *28 (Bankr. S.D.N.Y. Feb. 24, 2006) (finding that "the Telecom Argentina APE, and the Approval Order, qualify for recognition under Section 304" and observing, among other things, that the APE provided just treatment of creditors) *aff'd*, Case No. 06-2352 (NRB), 2006 WL 3378687 (S.D.N.Y. Nov. 20, 2006), *aff'd*, *Telecom Arg.*, 528 F.3d 162 (2d Cir. 2008); *Argentinian Recovery Co. LLC v. Bd. of Dirs. of Multicanal S.A.*, 331 B.R. 537, 544 (Bankr. S.D.N.Y. 2005) ("Multicanal's APE, which bears many similarities to a prepackaged chapter 11 proceeding, is the type of reorganization proceeding that, in principle, is subject to recognition under § 304.").

**B.  The Court Should Recognize and Enforce the Reorganization Plan and the Endorsement Order in the United States and Grant Related Relief**

37.     The Foreign Representative also seeks, upon recognition of the Concurso as a foreign main proceeding, the Court's assistance in recognizing and enforcing the Reorganization Plan and the Endorsement Order in the United States and certain related relief as further discussed below. Chapter 15 recognition and enforcement is one of the last steps in this

reorganization process and necessary to facilitate implementation of the restructuring contemplated under the Reorganization Plan and ensure that the provisions of the Reorganization Plan are applied consistently in Argentina and the United States. Among other things, the Foreign Representative seeks this Court's assistance through issuance of an order authorizing and directing the U.S. Intermediaries to carry out the ministerial actions necessary to consummate the Reorganization Plan as approved by the Endorsement Order. The Foreign Representative submits that such assistance is warranted under sections 105, 1507, 1521 and 1525 of the Bankruptcy Code and principles of international comity. Assistance is also consistent with the goals of international cooperation and assistance embodied in chapter 15 of the Bankruptcy Code. 11 U.S.C. § 1501(a).

38.     Section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[,]" including any relief that may be available to a trustee or debtor-in-possession, subject to certain exceptions that do not apply here. 11 U.S.C. § 1521(a); *In re Daebo Int'l Shipping Co., Ltd.*, 543 B.R. 47, 52–53 (Bankr. S.D.N.Y. 2015); *Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA)*, 535 B.R. 543, 586 (Bankr. S.D.N.Y. 2015) ("a foreign representative may obtain relief available to a trustee under the Bankruptcy Code . . . ."); *see also In re ABC Learning Centres Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) ("Foreign Representatives can access U.S. courts to request enforcement of orders of the foreign proceeding and to stay actions against foreign debtors' property in the United States."). The Court may also provide "additional assistance" to a foreign representative pursuant section 1507 of the Bankruptcy Code. 11 U.S.C. § 1507(a). Moreover, section 105(a) of the Bankruptcy Code authorizes the court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

39.     The Foreign Representative submits that the assistance requested is both necessary to effectuate the purpose of chapter 15 of the Bankruptcy Code and to protect the interests of the Debtor's creditors in accordance with the requirements of section 1521(a) of the Bankruptcy Code. 11 U.S.C. § 1521(a). Recognition and enforcement is necessary to ensure that the restructuring contemplated in the Reorganization Plan (as approved by the requisite majorities of the Debtor's creditors and endorsed by the Argentine Court) is implemented consistently and without disruption across jurisdictions. In addition, entry of the Proposed Order will give clear direction and authority to the U.S. Intermediaries to carry out the restructuring in accordance with the Reorganization Plan, the Endorsement Order and Argentine Insolvency Law and ensure that the Plan is successfully implemented within the territorial jurisdiction of the United States. The requested relief, therefore, will benefit the Debtor and its estate, and provide meaningful assistance in connection with the implementation of the Endorsement Order and the Reorganization Plan. The relief sought, therefore, is warranted under sections 1521 and 1507 of the Bankruptcy Code.

40.     Recognition and enforcement of the Reorganization Plan and Endorsement Order is appropriate and courts in this district have previously granted recognition and enforcement of foreign court orders approving a foreign debtor's restructuring plan. *See, e.g.*, *The Argo Fund Ltd. V. Bd. of Dirs. of Telecom Arg., S.A., as Foreign Rep. of Telecom Arg., S.A. (In re Bd. of Dirs. of Telecom Arg., S.A.)*, 528 F.3d 162, 174-75 (2d Cir. 2008); *In re Rede Energia*, 515 B.R. 69, 93 (Bankr. S.D.N.Y. 2014); *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 554 (Bankr. S.D.N.Y. 2017); *In re Ocean Rig UDW Inc.*, Case No. 17-10736 (MG) [Dkt. No.

153] (Bankr. S.D.N.Y. Sept. 20, 2017); *In re Boart Longyear Ltd.*, Case No. 17-11156 (MEW) [Dkt. No. 45] (Bankr. S.D.N.Y. Aug. 30, 2017); *In re Mood Media Corp.*, Case No. 17-11413 (MEW) [Dkt. No. 44] (Bankr. S.D.N.Y. June 28, 2017); *In re Pac. Expl. & Prod. Corp.*, Case No. 16-11189 (JLG) [Dkt. No. 31] (Bankr. S.D.N.Y. Oct. 3, 2016); *In re Kaisa Grp. Holdings Ltd.*, Case No. 16-11303 (SHL) [Dkt. No. 22] (Bankr. S.D.N.Y. July 14, 2016).

### 1.    Recognition and Enforcement is Consistent with Principles of Comity

41.    In considering whether to grant relief under section 1507 of the Bankruptcy Code, courts will consider principles of comity as set out in section 1507(b). These include, relevant to this discussion: (i) just treatment of all holders of claims against or interests in the debtor's property, (ii) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding, (iii) prevention of preferential or fraudulent dispositions of property of the debtor, and (iv) distribution of proceeds of debtors property substantially in accordance with the order prescribed by this title. 11 U.S.C. 1507(b).

42.    The first factor (just treatment) is satisfied upon "… a showing that the applicable law provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors." *Telecom Arg.*, 528 F.3d at 170 (*quoting* 2 COLLIER ON BANKRUPTCY ¶ 304.08 (15th ed. 2007) ("Usually, an ancillary petition furthers the goals of just treatment of all creditors by preventing piecemeal dismemberment and by centralizing administration of the debtor's affairs and assets.")). A foreign proceeding fails to satisfy this factor when creditors are not given access to information or a meaningful opportunity to be heard or if a foreign proceeding would not recognize certain creditors as claimholders. *See Telecom Arg.*, 528 F.3d at 170. As described in detail in the Argentine Counsel Declaration, Argentine Insolvency Law provides for a comprehensive procedure for the orderly and fair

resolution of claims and the equitable distribution of assets among all of the estate's creditors.

The basic principle governing a *concurso preventivo* is equality of treatment among creditors.

The proceeding is under the supervision of the Argentine court. Creditors of the debtor are

provided notice of the reorganization plan and an opportunity to object and requisite majorities

of creditors must vote in favor of the reorganization plan. *See* Argentine Counsel Declaration at

¶¶ 13, 34, and 42-50. Courts have also recognized that a *concurso preventivo* is similar in many

respects to a chapter 11 proceeding under the Bankruptcy Code. *See e.g*., *In re Compania de*

*Alimentos Fargo, S.A., 376 B.R. 427* (Bankr. S.D.N.Y. 2007) ("[t]he *concursos preventivo* is

similar to a chapter 11 case in the United States").

43.     Protection of claim holders in the United States against prejudice and

inconvenience in the processing of claims is satisfied where creditors are given adequate notice

of timing and procedures for filing claims, and such procedures do not create any additional

burdens for a foreign creditor. *See, e.g*., *In re Treco*, 240 F.3d 148, 158 (2d Cir. 2001); *In re*

*Petition of Hourani*, 180 B.R. 58, 68 (Bankr. S.D.N.Y 1995). As described in the Argentine

Counsel Declaration, generally the procedures and process with respect to claims apply to all

creditors and US creditors are not required to undertake any process or procedure that is different

than similarly situated non-US creditors. The Argentine court fixes a deadline for creditors to file

claims in the court's order commencing the case. Notice of the court's order must be published

and notice must be sent to each creditor identified in a debtor's petition. All prepetition creditors,

regardless of whether foreign or domestic, must file proofs of claim by the deadline established

by the court. Finally, with the exception of certain preferred claims (for example, statutory

priority claims for wages and taxes) similarly situated claims must receive equal treatment under

a debtor's reorganization plan.

44.    The third factor under section 1507(b) of the Bankruptcy Code requires that the "additional assistance" proposed will reasonably assure prevention of preferential or fraudulent dispositions of property of the debtor. Among the creditor protections afforded under Argentine Insolvency Law, courts have the power to avoid fraudulent dispositions of property that prejudice a debtor's estate. In addition, Argentine law also recognizes a cause of action for breach of fiduciary duty. As noted in the Argentine Counsel Declaration, creditors are protected from actions of company officers and directors that are inconsistent with their duties and Argentine law allows third parties, such as creditors, to enforce the duties of officers and directors. *See* Argentine Counsel Declaration at ¶¶56-60.

45.    The fourth factor requires that the distribution of the Debtor's property substantially accords with the order of distribution available under the Bankruptcy Code. *See In re Gee*, 53 B.R. 891, 904 (S.D.N.Y. 1985); *see also Haarhuis v. Kunnan Enters., Ltd.*, 177 F.3d 1007 (D.C. Cir. 1999) (Taiwanese distribution system was substantially in accordance with U.S. law because, among other reasons, the priority accorded to claims is similar to those accorded priority in the United States). The "substantially in accordance" factor does not require that the foreign distribution be identical to United States Bankruptcy Law. *In re Ionica*, 241 B.R. 829, 836 (Bankr. S.D.N.Y. 1999) ("Section 304(c)(4) only requires that the foreign distribution scheme be 'substantially in accordance' with United States bankruptcy law; it does not have to mirror the United States distribution rules.") (citations omitted).  As noted above, a Concurso requires consent by a requisite majority of creditors and, therefore, at its heart is a consensual process and, as detailed in the Argentine Counsel Declaration, Argentine law provides substantive and procedural safeguards for creditors and similarly situated claims must receive equal treatment under a debtor's reorganization plan.

46.     Authorizing and directing the U.S. Intermediaries to take the necessary steps to implement the Reorganization Plan will ensure that all holders of claims arising under the 2005 Notes have an opportunity to receive their consideration under the Reorganization Plan (which was approved by the requisite majorities required under Argentine Insolvency Law) in the form of Class A Shares of Supercablecanal.

**2.     Granting a Permanent Injunction is Necessary to Enforce the Endorsement of the Reorganization Plan**

47.     The Foreign Representative also seeks an injunction to prevent any parties from attempting to continue or commence actions or assert claims in the United States against the Debtor or its property inconsistent with the Reorganization Plan or the Endorsement Order, including an injunction against the assertion of claims arising under the 2005 Notes and the Indenture in contravention of the Reorganization Plan. Consistent with the injunction and discharge approved in a confirmed chapter 11 plan, the injunction requested here is necessary to ensure that parties cannot take inconsistent actions adverse to the Debtor or its property located in the territorial jurisdiction of the United States.

48.     Pursuant to section 1521(e) of the Bankruptcy Code, the standard for injunctive relief under federal law applies in chapter 15 cases. 11 U.S.C. § 1521(e). To obtain a permanent injunction, a movant must demonstrate that (i) an injunction is required to avoid irreparable harm and (ii) movant succeeds on the merits. *See Clarkson v. Coughlin*, 898 F. Supp. 1019, 1035 (S.D.N.Y. 1995).

49.     Irreparable harm in the chapter 15 context exists where there is a risk that the orderly and fair distribution of a debtor's assets could be disrupted absent injunctive relief. *See*, *e.g.*, *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) ("The equitable and orderly distribution of a debtor's property requires assembling all claims

against the limited assets in a single proceeding; if all creditors could not be bound, a plan of

reorganization would fail."); *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003); *In re

MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("The guiding principle of bankruptcy

law is equality of distribution….As a rule, therefore, irreparable harm exists whenever local

creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the

detriment of the other creditors."); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993)

(quoting *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ("the premature piecing out of

property involved in a foreign liquidation proceeding constitutes irreparable injury.").

50.     Without an injunction barring creditors from seeking judgments in the

United States in contravention of the Reorganization Plan, certain creditors may attempt to assert

discharged claims in United States courts in an attempt to obtain more than the treatment to

which they are entitled under the Reorganization Plan. In particular, the 2005 Notes were issued

under the New York law governed Indenture to which the Debtor was party. If these creditors

could effectively circumvent the terms of the Reorganization Plan by commencing actions in the

United States, the Debtor would be left to defend against such actions, which would deplete the

restructured Debtor's assets and be a waste of time and resources. Allowing creditors to litigate

discharged claims in the United States would threaten the success of the Reorganization Plan and

cause "irreparable harm" to the Debtor. The granting of the requested relief, conversely, would

protect the interests of all of the Debtor's creditors by ensuring a fair, efficient and uniform

implementation of the Reorganization Plan.

51.     The merits of the Motion and the relief sought are briefed in this

Memorandum of Law. Recognition will occur simultaneously with or prior to the granting of any

discretionary relief to the Petitioner pursuant to section 1521 of the Bankruptcy Code. Therefore,

a Court order recognizing the Concurso and granting the requested relief would satisfy the requirement that the Chapter 15 Petition succeed on the merits.

52.     Absent relief, implementation of the Debtor's reorganization could be hindered by the actions of dissenting creditors, a result that is inconsistent with the purposes of chapter 15. The interests of affected parties under the Reorganization Plan are sufficiently protected and the injunction will not cause undue hardship as the Concurso is a judicial proceeding similar to a U.S. chapter 11 case under the Bankruptcy Code and creditors had notice and an opportunity to be heard.

53.     Finally, courts in this district previously have granted similar injunctive relief and assistance (*i.e.*, injunctions to enforce foreign restructuring plans and discharges) with respect to foreign proceedings including Argentine reorganization proceedings, under chapter 15 and its predecessor, section 304 of the Bankruptcy Code. *See In re Inversora Eléctrica de Buenos Aires S.A.*, *560 B.R. 650 (Bankr. S.D.N.Y. 2016)*; *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486 (Bankr. S.D.N.Y. 2004); *aff'd* and remanded, 331 B.R. 537 (S.D.N.Y. 2005); *In re Bd. of Dirs. of Telecom Arg.*, 2006 WL 686867, *aff'd*, *Telecom Arg.*, 528 F.3d 162 (2d Cir. 2008); *In re Cablevisión S.A.*, Case No. 04-15697 (SMB) (Bankr. S.D.N.Y. October 23, 2009); *see also*, *In re Rede Energia S.A.*, 515 B.R. at 93 (citing *Telecom Arg.*, 528 F.3d at 174-76); *In re Sino-Forest Corp.*, 501 B.R. 665 (Bankr. S.D.N.Y. 2013); *In re Metcalfe & Mansfield*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010).

**3.     Additional Relief is also Warranted under Section 1525**

54.     In addition, section 1525(a) of the Bankruptcy Code provides, "consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative." 11 U.S.C. § 1525(a). The Foreign Representative believes that recognition and enforcement of the Reorganization Plan and Endorsement Order is necessary to

give more complete effect to the reorganization effected by the Endorsement Order in the United States. Thus, in addition to the reasons set forth above, this Court should enter the Proposed Order pursuant to sections 1501 and 1525 of the Bankruptcy Code and under well-established principles of international comity, to assist the Foreign Representative with this final stage of the restructuring of the Debtor, and to prevent interference with the claims discharge process.

**4.      Granting Additional Relief with Respect to the 2005 Notes and the U.S. Intermediaries is Appropriate**

55.      As discussed above, the 2005 Notes are of no further force or effect and the obligations thereunder have been discharged. The exchange of the 2005 Notes for the Class A Shares through the DTC has been commenced but has not yet been completed. While the Debtor and Petitioner believe that the U.S. Intermediaries (including the Trustee and DTC) may rely on the Reorganization Plan (as endorsed by the Endorsement Order) and applicable Argentine Insolvency Law, U.S. based parties may question the extraterritorial application of the Endorsement Order and the Reorganization Plan. In particular, U.S. Intermediaries may not be, or may not believe themselves to be, subject to the direct jurisdiction of the Argentine Court, and, therefore, may be unable or unwilling to act in support of the Reorganization Plan and the Endorsement Order without authorization and direction from a United States Court.

56.      Accordingly, the Foreign Representative seeks the assistance of this Court through entry of an order (i) authorizing and directing the U.S. Intermediaries (including the Trustee and DTC) to take all steps necessary to effectuate the exchange of the 2005 Notes for the Class A Shares and to carry out the ministerial acts necessary to consummate the Reorganization Plan (including the cancellation of the form of 2005 Notes) and (ii) providing that, upon the completion of such duties, the Indenture Trustee for the 2005 Notes may be relieved of any further obligation.

57.     Bankruptcy courts have entered similar orders authorizing and directing indenture trustees to carry out the actions contemplated under a foreign plan. In several chapter 15 cases courts have entered orders granting, among other relief, the relief similar to that requested here. *See, e.g.*, *In re Lupatech, S.A.*, *et al.*, Case No. 14-11559 (SMB) (Bankr. S.D.N.Y. July 14, 2014) [Dkt. No. 31] (recognizing Brazilian plan and homologation order and authorizing and directing "any ministerial actions that may be necessary to consummate the transactions contemplated by the Foreign Plan, including the issuance and distribution of new securities to the Bondholders and the cancellation of the Unsecured Bonds"); *In re Inversora Eléctrica de Buenos Aires S.A.*, Case No. 16-12854 (MG) [Dkt. No. 15] (Bankr. S.D.N.Y. November 23, 2016) (authorizing and directing "ministerial actions that may be necessary to consummate the transactions contemplated by the IEBA APE, including the cancellation of the Old Notes and of the Old Notes Indenture, and the issuance and distribution of new securities to the holders of the Old Notes, all as more fully described in the Homologation Order"); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [Dkt. No. 36] (Bankr. S.D.N.Y. September 9, 2014) (granting full force and effect to Brazilian reorganization plan and authorizing and directing the DTC and the indenture trustee "to take any lawful actions that may be necessary to consummate the transactions contemplated by the Brazilian Reorganization Plan" including the assignment of certain notes to a third party and the execution of a supplemental indenture related thereto); *In re Aralco S.A. – Industria e Comercio*, *et al.*, No. 15-10419 [Dkt. No. 22] (Bankr. S.D.N.Y. April 21, 2015) (granting full force and effect to Brazilian reorganization plan and providing that "[t]he DTC and the Indenture Trustee, its agents, attorneys, successors and assigns are hereby authorized and directed to take any lawful actions that may be necessary to consummate the transactions contemplated by the Brazilian Reorganization Plan").

## Conclusion

WHEREFORE, the Foreign Representative respectfully requests that the Court

grant the relief requested in the Motion and such other and further relief as may be just and

proper.

Dated:   New York, New York
         June 21, 2018

Respectfully submitted,

/s/ Jennifer C. DeMarco
_____
CLIFFORD CHANCE US LLP
Jennifer C. DeMarco
Sarah N. Campbell
31 West 52nd Street
New York, New York 10022
Telephone: (212) 878-8000

*Attorneys for the Foreign Representative*